Joshua M. Wolf, OSB No. 141892
WOLF LEGAL, LLC
220 NW 8th Ave.
Portland, Oregon 97209
Telephone: 503.893.9788
Email: Josh@WolfLegalPDX.com

J. Stephen Simms
(*Pro hac vice* application forthcoming)
SIMMS SHOWERS LLP
201 International Circle
Baltimore, Maryland 21030
Telephone: 443-290-8704
Email: jssimms@simmsshowers.com

*Attorneys for Plaintiff*
DAN-BUNKERING (MIDDLE EAST) DMCC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAN-BUNKERING (MIDDLE EAST) DMCC, | ) |
| Plaintiff, | ) Case No. 3:20-cv-00522 |
| v. | ) **VERIFIED COMPLAINT** |
| M/V OLYMPIC PROGRESS, IMO No. 9513854, its engines, tackle, and apparel, *in rem*, | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT**

COMES NOW, Plaintiff Dan-Bunkering (Middle East) DMCC ("Plaintiff" or "Dan-Bunkering"), by and through undersigned counsel, and files this Verified Complaint, against

Page - 1 -       VERIFIED COMPLAINT

Defendant M/V OLYMPIC PROGRESS, *in rem* (the "Vessel"). Plaintiff alleges and pleads as follows:

## JURISDICTION AND VENUE

1. Subject matter jurisdiction of the Court is based upon admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought under the provisions of Rule C of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). This case is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breach of maritime contract, namely, for the unpaid-for provision of marine fuel ("bunkers") to the Vessel.

2. Venue is proper in the United States District Court for the District of Oregon pursuant to 33 U.S.C. § 1391(b)(2) because the Vessel is or will soon be located in the judicial district along the Columbia River and/or in the Port of Portland, Oregon.

## THE PARTIES

3. At all times material hereto, Plaintiff Dan-Bunkering was and still is a foreign corporation registered in Dubai.

4. At all times material hereto, Defendant Vessel is a 32795 gross tonnage, bulk carrier, built in 2012, with IMO No. 9513854, with an International Call Sign of V7YP8, and is now or will be within the District of Oregon and is subject to the jurisdiction and venue of the Court.

## FACTS

5. On or about June 13, 2019, the charterer of the Vessel (Dry Bulk Singapore (the "Charterer")) ordered marine fuel ("bunkers") from Dan-Bunkering for provision to the Vessel.

The order confirmation for the bunkers states that the order is "For account of: M/V OLYMPIC PROGRESS and/or master and/or owners and/or charterers and/or managers and/or operators and/or Dry Bulk Singapore Pte. Ltd."

6. Dan-Bunkering thereafter provided the bunkers to the Vessel pursuant to Dan-Bunkering's General Terms and Conditions and on June 29, 2019 invoiced the "OLYMPIC PROGRESS and/or master and/or owners and/or charterers and/or managers and/or operators and/or Dry Bulk Singapore" for the provision, a total of **USD 175,174.16**. Payment was due by July 13, 2019.

7. Dan-Bunkering's Standard Terms and Conditions ("STCS") control its contract for providing bunkers to the Vessel include the following provisions:

> 1. DEFINITIONS AND TERMS:
>
> \* \* \*
>
> 'Buyer' all parties, jointly and severally, named on the Order Confirmation who have contracted with the Seller to buy Products, including their assignees or successors.
>
> \* \* \*
>
> 1.2 These STCS shall take precedence over any terms that the Buyer may seek to impose and replace and/or supersede any of the Seller's earlier standard contractual conditions. No variation shall be binding unless agreed in writing by the Seller.
>
> \* \* \*
>
> 1.4 The Buyer buys and the Seller sells Products in accordance with the Contract and these STCS shall be incorporated into all Order Confirmations and Contracts whether or not express reference to the STCS is made therein.
>
> \* \* \*
>
> 2. ORDER CONFIRMATION

2.1    A binding Contract comes into existence when the Seller sends the Order Confirmation to the Buyer.

2.2    Where a Contract is entered into by an Agent, whether disclosed or undisclosed, then such Agent with notice of these STCS shall (i) be jointly and severally liable with the Buyer for the proper performance of all the obligations of the Buyer under this Contract as if acting as a principal; and/or (ii) guarantee the Buyer's obligations under the Contract.

2.3    All orders of Products are considered to be emanating from the Master of the vessel, even if relayed by the Buyer to the Seller and even if no written request for the Master of the vessel exists, and the Buyer's obligations under a Contract shall be treated as a primary lien on the Vessel.

\* \* \*

4.    PRICE

4.4    The Seller shall have a lien on the Vessel for all sums payable in respect of Products delivered to a Vessel.

\* \* \*

13.    LIEN

13.1   It is agreed and acknowledged that a lien over the Vessel is created for the price of the Products supplied together with any interest accrued. The Buyer, if not the Owner of the Vessel, hereby expressly warrants that they have full authority of the Agents/Traders/Owners/Managers/Operators/Charterers to pledge the Vessel in favour of the Seller and that they have given notice of the provisions of this Contract to them. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien(s) attaching to a Vessel.

13.2   The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

13.3   The Buyer or the Vessel or its owners must notify the Seller of its intention to exclude the liability of the Vessel at least 12 hours in advance of the supply by sending written notice to legal@dan-bunkering.com, failing which any

notice or any stamp in the Bunker Delivery Note seeking to vitiate the Seller's maritime lien on the Vessel shall be of no effect.

* * *

18.    LAW AND JURISDICTION

18.1    These STCS and all Contracts are governed by the general maritime law of the United States of America and disputes shall be determined by Arbitration in London by a sole arbitrator according to the LMAA Rules 2017. The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. In case of breach of contract by the Buyer, the Seller shall be entitled to take such legal action in any court of law in any state or country which the Seller may choose and which the Seller finds relevant in order to safeguard or exercise the Seller's rights in pursuance of this present Agreement. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

Dan-Bunkering, by provision of bunkers, which are a maritime necessary, holds a maritime lien *in rem* against the Tug and thus against the Tug's sale proceeds.

### Breach of Maritime Contract – Arrest of Vessel, *In Rem*

9.    Dan-Bunkering incorporates the above paragraphs as if fully set forth herein.

10.    Despite repeated demand, Dan-Bunkering has not been paid for the bunkers. Dan-Bunkering therefore proceeds against the Vessel, *in rem*, in execution on its maritime lien for the value of the bunkers and its costs.

WHEREFORE PREMISES CONSIDERED, Plaintiff Ban-Bunkering prays as follows:

A.    That Process in due form of law, according to the practice of this Court in matters of admiralty and maritime jurisdiction be issued against the Defendants, and the Defendant M/V OLYMPIC PROGRESS be arrested pursuant to Rule C of the Supplemental Rules for Certain

Admiralty and Maritime Claims and cited to appear and answer the allegations of this Verified Complaint;

   B. That this Court enter an Order of *in rem* arrest for M/V OLYMPIC PROGRESS pursuant to Supplemental Rule C to enforce Plaintiff's maritime lien;

   C. That judgment be entered against the M/V OLYMPIC PROGRESS, *in rem* in the sum of **USD 175,174.16**, plus applicable interest, costs, and fees pleaded herein;

   D. That this Court grant such other and further relief as it deems just, equitable, and proper under the circumstances.

DATED: March 30, 2020

              WOLF LEGAL, LLC

              /s/ Joshua M. Wolf
              Joshua M. Wolf, OSB No. 141892

              -and-

              SIMMS SHOWERS LLP
              J. Stephen Simms
              (*Pro hac vice* application forthcoming)

              *Attorneys for Plaintiff*
              DAN-BUNKERING (MIDDLE EAST) DMCC